# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | : | |
|---|---|---|
| | : | CRIMINAL ACTION |
| v. | : | NO. 15-37 |
| | : | |
| JEFFREY BADO, | : | |
| Defendant. | : | |

Jones, II    J.  May 30, 2017

## MEMORANDUM

In a 322-count Superseding Indictment, Defendant – a former doctor – was charged with a number of crimes related to his practice of prescribing opiate medications. Count III of the Superseding Indictment charged Defendant with dispensing controlled substances, the use of which resulted in the death of a former patient. Defendant was adjudged guilty of that count, as well as 308 additional charged counts. Defendant filed the present Motion pursuant to Federal Rule of Criminal Procedure 33, petitioning the court to vacate the jury's guilty verdict on Count III of the Superseding Indictment and remand this matter for a new trial on that charge alone. Defendant argues that the court must grant a new trial because no reasonable jury could have found Defendant guilty beyond a reasonable doubt on Count III based on the evidence presented at trial. In Defendant's view, to allow the jury's verdict to stand would result in a serious miscarriage of justice. For the reasons that follow, this Court finds that the jury's verdict on Count III was not inconsistent with the weight of evidence adduced at trial and there is no evidence that a miscarriage of justice has occurred. Defendant's Motion is denied.

## FACTUAL BACKGROUND

On January 10, 2015, a grand jury charged Defendant Jeffrey Bado with 322 criminal counts, including one count of unlawful distribution of a controlled substance resulting in death,

1

in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) ("Count III"). Count III specifically relates to the death of Defendant's former patient Joseph Armstrong. Armstrong died twenty-four days after filling prescriptions – written by Defendant – for 120 pills containing eighty milligrams of Oxycodone, 120 pills containing thirty milligrams of Oxycodone, and 240 pills containing ten milligrams of Methadone. Blood samples obtained the day after Armstrong's death confirmed the presence of varying levels of Oxycodone, Methadone, and cocaine in Armstrong's system at the time of his death on February 17, 2011.

On December 8, 2016, after eleven weeks of trial proceedings, the jury returned a unanimous verdict finding Defendant guilty of Count III of the Superseding Indictment and 308 other charged counts. Prior to the filing of the Motion presently before this Court, Defendant filed a Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"). In connection with Defendant's Rule 29 Motion, on January 17, 2017, this Court issued a sixteen page opinion in which it ultimately concluded that the government presented sufficient evidence upon which the jury could find Defendant guilty of each challenged charge – including Count III presently at issue.

On December 21, 2016 Defendant timely filed the present Motion for New Trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33"). Pursuant to Rule 33, Defendant moves this Court to vacate the jury's verdict as it relates to Count III of the Superseding Indictment and remand this case for a new trial on that charge alone. Now pending before the Court is Defendant's Motion (Dkt No. 283), Government's Response in Opposition (Dkt No. 288), and Defendant's Reply (Dkt No. 299).

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 33 permits the court to "vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33. "A new trial should be ordered only when substantial prejudice has occurred," and the interest of justice so requires. United States v. Georgiou, 777 F.3d 125, 143 (3d Cir. 2015) (quoting United States v. Armocida, 515 F.2d 29, 49 (3d Cir. 1975)), *cert. denied*, 136 S. Ct. 401 (2015). To order a new trial on the ground that the jury's verdict is contrary to the weight of evidence, the Court must determine "that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." United States v. Salahuddin, 765 F.3d 329, 346 (3d Cir. 2014) (quoting United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002)), *cert. denied*, 135 S. Ct. 2309, 191 L. Ed. 2d 977 (2015). "Thus, '[m]otions for a new trial based on the weight of the evidence are not favored. Such motions are to be granted sparingly and only in exceptional cases.'" United States v. Brennan, 326 F.3d 176, 189 (3d Cir. 2003) (quoting Gov't of V.I. v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987)). "When evaluating a Rule 33 motion, the district court 'does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case.'" Salahuddin, 765 F.3d at 346 (quoting Johnson, 302 F.3d at 150).

**DISCUSSION**

Count III of the Superseding Indictment charged Defendant with having unlawfully dispensed Oxycodone and Methadone, the use of which resulted in the death of Defendant's former patient Joseph Armstrong. Under 21 U.S.C. § 841(a)(1), (b)(1)(C), unlawful distribution resulting in death requires proof of the following four elements: (1) Defendant distributed or dispensed a mixture or substance containing a controlled substance; (2) the distribution was knowing and intentional; (3) Defendant distributed/dispensed the controlled substance outside of

the course of professional practice and not for a legitimate medical purpose; and (4) death resulted from the use of the controlled substance. (Third Circuit Model Jury Instructions 6.21.841B; Modern Federal Jury Instructions Criminal 56.02). For the purposes of the instant Motion, Defendant does not challenge the sufficiency of the government's evidence as to the first three elements of the standard for proving guilt under §841(a)(1), (b)(1)(C). Instead, Defendant argues that the weight of the evidence presented at trial militated against a finding that the government proved the fourth element of § 841(a)(1), (b)(1)(C) beyond a reasonable doubt.

Defendant argues that "no reasonable jury could have found [Defendant] guilty beyond a reasonable doubt on Count III of the Superseding Indictment" because the government failed to adduce evidence sufficient to establish: (1) the opioid medications Armstrong ingested before his death were that which Defendant prescribed over three weeks prior, and (2) the opioids Armstrong ingested were the "but for cause" of Armstrong's death. (Reply, 1). For the reasons that follow, this Court finds that there was ample evidence to support the jury's verdict as it relates to Count III of the Superseding Indictment.

I. **Courts in the Third Circuit are disinclined to grant Rule 33 motions where a defendant's challenges to the evidence were presented to the jury at trial.**

As a preliminary matter, it would appear from Third Circuit precedent that this Court would be free to summarily reject all arguments Defendant advances in support of the present Motion because each stated challenge to the sufficiency of the evidence was presented to – and apparently rejected by – the jury. Courts in this jurisdiction routinely express unwillingness to grant Rule 33 Motions for New Trial where the arguments in support thereof were offered to the jury before the jury rendered its verdict. See, e.g., United States v. Salahuddin, 765 F.3d 329, 346 (3d Cir. 2014) ("The majority of Cooper's arguments amount to challenges to Mazzocchi's

credibility and motives…We can entirely reject these arguments, as the jury was made aware – through cross-examination, closing arguments, and the jury instructions – of Mazzocchi's motivations, potential bias, and inconsistent testimony."); United States v. McIntyre, 612 F. App'x 77, 80 (3d Cir. 2015) ("McIntyre's argument that two of the witnesses had credibility problems is equally unavailing. Defense counsel explored those issues at trial, and how the jury resolved the questions counsel raised was a matter reserved to its judgment.").

As seen in the aforementioned cases, Defendant thoroughly examined the perceived deficiencies in the government's evidence through cross-examination of witnesses and presentation of opening statement and closing arguments. This Court reviewed hundreds of pages of trial transcripts reflecting Defense counsel's efforts to underscore its arguments against the sufficiency of the evidence as it relates to Count III of the Superseding Indictment. The court is therefore confident that at the time it rendered its verdict, the jury was aware of, and had the opportunity to consider, all of the arguments presently before the court on the instant Motion. The record supports this Court's conclusion that the jury rendered a guilty verdict after full consideration of the limitations of the evidence favorable to the prosecution, and the court is therefore satisfied that the interests of justice have been served.

Moreover, as a substantive matter, in objectively assessing the evidence adduced over the nearly three months of trial, this Court cannot identify a single basis upon which to conclude a miscarriage of justice occurred as it relates to Defendant's conviction. For the reasons that follow, this Court finds that there is ample evidence to support the jury's determinations that (1) Defendant was the source of the prescription pills Armstrong ingested before his death, and (2) said prescription pills were the "but for" cause of Armstrong's death.

## II. There was ample evidence to support the jury's determination that Defendant was the source of the opioid medications Armstrong ingested before his death.

For the purposes of challenging the sufficiency of the government's evidence related to the origination of the prescription pills, Defendant recasts and supplements arguments this Court rejected when deciding Defendant's Rule 29 Motion for Judgment of Acquittal. Having already fully examined the evidence adduced to establish Defendant as the source of the prescription pills found in Armstrong's system postmortem, and the limitations thereof, this Court will not needlessly belabor the specifics of the evidence favorable to each party on the issue of origination. This Court acknowledges that the government's case-in-chief was conspicuously devoid of direct evidence concretely linking Defendant to the specific pills implicated in Armstrong's death. But this Court finds that the testimony of Armstrong's common law wife, Melissa Orler, provided a sufficient basis upon which a reasonable jury could conclude that Defendant prescribed the pills Armstrong ingested at the time of his death.

Defendant identifies numerous reasons to question Melissa Orler's credibility, all of which were presented to the jury before the start of deliberations. On cross-examination of Orler, Defense counsel elicited testimony regarding Orler's struggles with substance abuse and Armstrong's occasional trips to purchase illicit street drugs outside Orler's presence. In this Court's assessment, Orler addressed each challenge to her credibility in way that could resolve a reasonable jury's doubts regarding the reliability of her testimony. There is no reason for this Court to conclude that Melissa Orler was an inherently incredible witness. The court is satisfied that reliance on her testimony to conclude that Defendant was Armstrong's sole provider of opioid medication is congruent with the weight of the evidence presented at trial.

### III. There was ample evidence to support the jury's finding that Oxycodone and Methadone were the "but-for" causes of Armstrong's death.

Defendant similarly challenges the sufficiency of the evidence to establish Oxycodone and Methadone as but-for causes of Armstrong's death. Defendant argues that each of the defense experts testified "without contradiction" that neither Oxycodone nor Methadone could be reliably identified as the but-for cause of Armstrong's death and that the level of cocaine in Armstrong's system postmortem is consistent with a cocaine-related death. (Reply, 1). Accordingly, Defendant contends that the jury's verdict – which inherently included a finding that the opioids Defendant prescribed were the proximate cause of Armstrong's death – was rendered against the weight of the evidence and must be vacated to avoid a miscarriage of justice.

This argument exceedingly mischaracterizes the evidence presented at trial. As Defendant detailed in his fifty-page Reply brief, defense experts Dr. Lee Blum and Dr. Charles Wetli strongly opined that there was no mechanism by which it could be determined to a medical certainty that the use of Oxycodone and Methadone caused Armstrong's death. (Reply, 1). But it is hardly the case that their testimony was presented to the jury unchallenged. The prosecution presented two expert witnesses, Dr. Edwin Lieberman and Dr. Richard Fruncillo, who were both emphatic in their opinions that were it not for his ingestion of the Oxycodone and Methadone, Armstrong would have lived.

Dr. Lieberman testified that, prior to his retirement in 2015, he worked for over twenty-five years as an Assistant Medical Examiner in Philadelphia County, during which time he performed thousands of autopsies. (Lieberman, 3, 6). Dr. Lieberman conducted the autopsy of Armstrong the morning after his death, (Lieberman, 19), and stated on the record that his

7

examinations of Armstrong's body postmortem supported the following findings: (1) Armstrong's preexisting heart condition did not cause his death on February 17, 2011(Lieberman, 24) ; (2) the cocaine Armstrong ingested "had absolutely no role in his death" (Lieberman, 27); and (3) Armstrong would have lived but for his ingestion of the Oxycodone and Methadone. (Lieberman, 33). Defense counsel cross examined Dr. Lieberman at the conclusion of his direct examination, and systematically challenged each of the above-described findings. (Lieberman, 34-61).

Dr. Fruncillo testified that after being employed for twenty years as a doctor in the Intensive Care Unit, he began working as an expert witness, testifying in around thirty cases per year since 2009. (Fruncillo 7, 9-10). Dr. Fruncillo testified that he rejects 75% of the cases for which he is asked to author an expert report, but agreed to testify for the prosecution in the instant case because he felt passionate about the issues involved. (Fruncillo, 10). Dr. Fruncillo explained that his expert findings were based on his examination of Dr. Lieberman's autopsy and toxicology report and the patient files Defendant compiled for Armstrong during Armstrong's time as a patient of Defendant's medical practice. (Fruncillo, 16). Dr. Fruncillo testified that based on his analysis of said documents, he can conclude the following to a reasonable degree of medical certainty: (1) "But for the use of [Methadone and Oxycodone], Mr. Armstrong would be alive today" (Fruncillo, 16); (2) the cocaine in Armstrong's system had no impact on Armstrong's death (Fruncillo, 16); and (3) Armstrong's preexisting coronary condition was insignificant as it relates to Armstrong's cause of death. (Fruncillo, 36). Defense counsel also cross-examined Dr. Fruncillo at the conclusion of his direct examination, and similarly systematically challenged each of the above-described findings. (Fruncillo, 47-63).

In its cross-examination of both witnesses, Defense counsel explored, *inter alia*, every argument advanced in its Rule 33 Motion: the alleged difficulty of quantifying Cocaine levels antemortem due to postmortem redistribution and postmortem metabolism (Reply, 6-7)(Lieberman, 53-56)(Fruncillo, 53-54); Armstrong's probable tolerance to the prescription drugs believed to have killed him (Reply, 10-11) (Lieberman, 51-52)(Fruncillo, 50); and the alleged inability to reliably identify Methadone and Oxycodone as but-for causes of Armstrong's death (Reply, 16)(Lieberman, 48-50) (Fruncillo, 58-60). Despite Defense counsel's in depth probing, each doctor remained steadfast in their respective medical conclusions that the prescription pills – and not cocaine use or coronary disease – were the but-for cause of Armstrong's death. The doctors each described – consistent with one another – that a cocaine induced death would present differently than what reportedly occurred in Armstrong's death. (Lieberman, 27) (Fruncillo, 22). And each doctor's explanation of the manner by which Armstrong died was corroborated by Melissa Orler's testimony regarding her observations of Armstrong's condition in the hours leading up to his death. (Lieberman, 29-30) (Fruncillo, 20).

Ultimately, on this issue, Defendant's arguments amount to little more than an attempt to force this Court to select a winner in the battle of the experts. It will not. As per the jury instructions given by this Court to every jury in every trial, the jurors are the sole judges of the credibility of witnesses, and the jury is free to believe or disbelieve any of the witnesses proffered by either party. The court finds no basis to disturb the jury's credibility determinations. As detailed above, there was more than enough evidence for the jury to conclude that Armstrong would not have died but for his consumption of the Oxycodone and Methadone. Defendant's Rule 33 Motion for New Trial is denied.

**CONCLUSION**

Defendant's disagreements with the jury's verdict do not legal error make. "In the Third Circuit, a court is not permitted to sit as a thirteenth juror and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." United States v. Gonzalez, 1993 U.S. Dist. LEXIS 12723 *1, *26 (E.D. Pa. September 13, 1993). After thorough, objective assessment of the evidence produced at trial, this Court finds that there was ample evidence to support the jury's findings that (1) Defendant prescribed the opiates Armstrong ingested before dying, and (2) the opiates were the but-for cause of Armstrong's death. It would not be a miscarriage of justice to allow the jury's verdict on Count III of the Superseding Indictment to stand, and there is no basis for the court to believe an innocent man has been wrongfully convicted.

Moreover, while immaterial to the disposition of the present Motion, the court thinks it important to note that, by all measures, the jury in this case was exemplary in its diligence and commitment to rendering a just verdict. The jury in this matter remained attentive and engaged over the course of eleven long weeks of trial proceedings, and as noted by the Defendant himself, the jury reviewed each of the eighty-nine patient files implicated in the 322 count Superseding Indictment. That the jury found Defendant not guilty of thirteen discrete counts within the Superseding Indictment speaks to the jury's dedication to unbiased assessment of the evidence supporting each individual criminal charge.

For all of the foregoing reasons, Defendant's Motion is **DENIED**. The jury's verdict will stand.

A corresponding order follows.

BY THE COURT:

/s/ C. Darnell Jones, II

C. Darnell Jones, II    J.